**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ASH GROVE CEMENT COMPANY,　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　) 　　　**Case No. 05-2339-JWL**
　　　　　　　　　　　　　　　　　)
EMPLOYERS INSURANCE OF WAUSAU, )
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　 )
　　　　　　　　　　　　　　　　　)
_____)

## MEMORANDUM AND ORDER

In this diversity action, plaintiff Ash Grove Cement Company (Ash Grove) seeks to recover under an insurance policy issued by defendant Employers Insurance of Wausau (Wausau).  The matter comes before the Court on Ash Grove's motions to exclude testimony from Wausau's expert witnesses, Jay Warshawsky (Doc. # 128), Ghattas Bitar (Doc. #135), and Rick Huntley (Doc. # 141); and Wausau's motions to exclude testimony from Ash Grove's expert witnesses, Eric Drews (Doc. # 139) and Roger Harris (Doc. # 140).  For the reasons set forth below, the motions relating to Messrs. Huntley, Drews, and Harris are denied; and the motions relating to Messrs. Warshawsky and Bitar are granted in part and denied in part.

I.    **Background**

Ash Grove operates a cement manufacturing plant located in Chanute, Kansas, which Wausau insured.  In 2001, Ash Grove discovered that the protective paint coating on the interior surfaces of a baghouse at the plant had suffered damage, including blistering, cracking and bubbling.  In this action, Ash Grove seeks to recover from Wausau under the insurance policy for damages relating to the replacement of the baghouse coating.

The parties espouse two differing theories regarding the cause of the damage to the baghouse coating.  Ash Grove alleges that on September 10, 2001, an employee cut a cable connected to a control panel for various equipment; that the cutting caused a short circuit in the cable's wires; that the short circuit caused some of the equipment to shut down, including equipment that cooled gases entering the baghouse in the cement manufacturing process; that the kiln ID fan did not shut down with the other equipment and continued to operate for several minutes; that the continued operation of the ID fan and the shutdown of the other equipment caused the temperature of gases on their way to the baghouse to rise to over 900 degrees Fahrenheit; that this high temperature excursion caused temperatures in the baghouse to exceed the 600-degree specified limit for the baghouse coating; and that the coating consequently suffered damage.

Wausau alleges that the baghouse coating was applied too thick, in excess of specifications, and that the coating therefore failed after it was cured by exposure to normal high temperatures after operations in the baghouse began in 2001.  Wausau

2

therefore alleges that the damage to the coating was caused not by the high temperature excursion experienced on September 10, 2001, but by the misapplication of the coating.

The parties have designated expert witnesses expected to offer opinions generally concerning the following subjects: the design and operation of the facility and its processes; whether the cutting of the cable caused an electrical event, the equipment shut-downs, and the high temperature excursion experienced on September 10, 2001; the temperatures reached in the baghouse on that date; and the damage to the coating and its cause. Each party has now moved to exclude the expert testimony offered by the other.

## II.    **Expert Testimony Standards**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert scientific testimony. *See* id. at 589-93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

3

In order to determine that an expert's opinions are admissible, this Court must undertake a two-part analysis:  first, the Court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the Court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*.  *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception rather than the rule.  *See* Fed. R. Evid. 702 advisory committee notes.

To qualify as an expert, the expert must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on substantial foundation and would tend to aid the trier of fact in its search for the truth.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).  In determining whether the proffered testimony is reliable, the Court assesses whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be properly applied to the facts in issue.  *See Daubert*, 509 U.S. at 592-93.  The *Daubert* Court listed four factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Id*. at 592-94.  In *Kumho Tire*, however, the Supreme Court emphasized that these four factors are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150.

In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundations.  *Id.* (quoted in *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004)).  The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Id.* at 152.

### III.   Ash Grove's Motion to Exclude – Jay Warshawsky (Doc. # 128)

Ash Grove seeks to exclude the opinion testimony of Jay Warshawsky, an electrical engineer, whom Wausau has designated as an expert witness.  Dr. Warshawsky authored a written report dated October 20, 2006, in which he stated a number of opinions and conclusions concerning the misapplication of the protective coating, the effects of the excessive thickness of the coating, and high temperatures reached in the baghouse on September 10, 2001, and on other occasions.

#### A.   *Coating Opinions*

Ash Grove challenges Dr. Warshawsky's ability to qualify as an expert competent to testify about the coating and the cause of its damage, based on Dr. Warshawsky's admission in his deposition that he was not being tendered as an expert on coating failures, as well as his testimony that he relied on others, including Wausau coatings expert Rick Huntley, for his knowledge about the coating misapplication and failure.  Wausau responds that it does not proffer Dr. Warshawsky as an expert in the field of high temperature silicone coating failures; rather, he is expected (1) to testify about the

operation of cement plants; (2) to refute the opinions of Ash Grove's experts concerning the extent and cause of the high temperature excursion on September 10, 2001, and to testify that the temperature in the baghouse did not exceed 621 degrees Fahrenheit; and (3) to testify that the alleged cable-cutting on that day did not cause the upset condition experienced that day.

Ash Grove's concern about opinions by Dr. Warshawsky relating to the coating is understandable. In the summary section of his written report, Dr. Warshawsky listed a number of conclusions relating to the misapplication of the coating, the fact that damage occurred only where the coating was too thick, and the reasons why too-thick coating does not cure properly. Dr. Warshawsky then listed the following "opinions":

> The Main Baghouse interior coating was damaged fatally before being placed into operational service.

> The observed failures were due to improper application and were accentuated by service at normal process temperatures.

> The incident on 9/10/01 did not cause the failure of properly-applied coating.

In the body of his report, Dr. Warshawsky included lengthy sections on the specifications for the coating, deviations from those specifications in the application of the coating, and the effects of excessive coating thickness. Finally, at the end of the report, Dr. Warshawsky listed his "conclusions". The first eight of the conclusions related directly to the coating and its misapplication and damage. After six conclusions about the baghouse temperatures, Dr. Warshawsky stated a final conclusion:

> In the final analysis the Baghouse temperature question is irrelevant since no damage, thermal or of any kind, was reported to coating applied in accordance with the Dampney specifications.

Thus, even though Dr. Warshawsky is purportedly not being offered as a coating expert, a substantial portion of his report is devoted to opinions and conclusions directly related to the coating.

In light of Dr. Warshawsky's admission and Wausau's representation that he will not serve as a coatings expert, the Court grants that portion of the motion, and Dr. Warshawsky is barred from giving opinion testimony concerning the protective coating, including its alleged misapplication, the damage to the coating, and the effect of high temperatures on such coating. This prohibition includes any testimony concerning the first eight conclusions and the last conclusion listed at the end of Dr. Warshawsky's report.

It is true that, ordinarily, an expert may rely on the opinions of another expert if they inform or contribute to his own independent opinions. Dr. Warshawsky may not simply parrot or recite the opinions and knowledge of other expert and fact witnesses, however. The ultimate opinion in this case, to which the others' coating opinions might contribute—namely, whether the damage to the coating was caused by high temperatures or by misapplication alone—still falls within the province of an expert on coatings. Accordingly, although Dr. Warshawsky may testify to his opinions concerning temperatures in the baghouse, he may not relate those opinions to the damage that occurred to the baghouse coating.

B.      *Other Expert Opinions*

On the other hand, the Court concludes that Dr. Warshawsky may testify as set forth by Wausau in its brief—that is, explaining the operations and processes in the cement plant, refuting the expert opinions offered by Ash Grove relating to the high temperature excursions and the temperatures reached in the baghouse, and refuting Ash Grove's theory that the upset condition on September 10, 2001, was caused by a cable-cutting and a resulting short circuit. Accordingly, Ash Grove's motion is denied with respect to such testimony.

Ash Grove argues that Dr. Warshawsky should not be permitted to testify about the baghouse temperatures because he did not conduct any tests or perform any calculations about the temperatures, and because he admitted that he could not determine the actual temperature in the baghouse on September 10, 2001. The Court rejects this argument. Dr. Warshawsky need not have performed his own tests or calculations to opine about the soundness of the methods of Ash Grove's experts and the variables that could affect any attempt to extrapolate temperatures in the baghouse from actual temperatures recorded upstream in the process. A party is not prohibited from using an expert to attack the other side's expert opinions; if such testimony is based on the witness's specialized knowledge and would be helpful to the jury, it may be admitted under Rule 702. In mounting such an attack, Wausau is not limited solely to the use of cross-examination, as Ash Grove suggests.

In addition, Dr. Warshawsky relied on the temperature data, testing concerning

damage to the filtration bags in the baghouse, and the lack of damage to properly-applied coating for his opinion that the temperature did not exceed 621 degrees. The Court does not find that Dr. Warshawsky's methods lack the necessary reliability.[1]

Ash Grove also argues that Dr. Warshawsky should not be permitted to testify that the temperatures did not exceed 621 degrees because his report did not include that number, but instead referred to the benchmark of 600 degrees. Dr. Warshawsky did give his opinion concerning the 621-degree figure in his deposition, however, and Ash Grove had ample opportunity at that time to discover any bases for that opinion. Accordingly, the Court rejects this basis for excluding the testimony.

Finally, the Court rejects Ash Grove's argument that Dr. Warshawsky should not be permitted to give an opinion concerning whether the cutting of the cable caused the high temperature excursion. Dr. Warshawsky may properly opine that the evidence of a short circuit is contradictory or lacking here, and that the upset condition was more likely caused by something else, in light of the other high temperature excursions and

---

[1]In support of his independent opinion that the temperature did not exceed 621 degrees, Dr. Warshawsky may rely on the 600-degree rating for the coating and the reports showing that properly-applied coating did not suffer damage (although he may not explain or adopt or attempt to vouch for or lend credence as an expert to such predicate knowledge or opinions). Because he is not a coatings expert, however, he may not then opine that because the temperature did not exceed 621 degrees, the September 2001 excursion could not have damaged the coating. This distinction regarding the interplay of the experts' opinions may be subtle, but it is necessary.

other problems experienced on other occasions.[2]  Again, the fact that his expert opinion may relate to a lack of evidence does not make such an opinion unreliable.  Attacking the opinions of other experts may be a proper subject for expert testimony.  Moreover, Dr. Warshawsky's opinions and bases regarding the cable-cutting are sufficiently addressed in an appendix to his report.

Accordingly, Ash Grove's motion to exclude opinion testimony by Dr. Warshawsky is granted in part and denied in part, as set forth above.

## IV.   Ash Grove's Motion to Exclude – Ghattas Bitar (Doc. # 135)

Ash Grove also seeks to exclude the opinion testimony of Ghattas Bitar, an electrical engineer designated as an expert witness by Wausau.  Mr. Bitar provided a short report dated June 26, 2002, which contained a list of conclusions.  The first conclusion was that "[t]he claimed electronic board associated with the alleged cut cable did not sustain damages and is reported to be functional."  The three other conclusions related to the temperature in the baghouse, the misapplication of the baghouse coating, and the lack of temperature-related damage to the filtration bags.[3]

### A.   *Opinions Concerning Coating, Bags, Temperatures*

---

[2]Of course, at trial Dr. Warshawsky may not offer any new opinion concerning a possible alternative cause of the upset condition on September 10, 2001, that he did not discuss in his report or at his deposition.

[3]A fifth conclusion noted only that a work order for September 10, 2001, had not been provided, and thus did not express any expert opinions.

Ash Grove argues that Mr. Bitar is not qualified to give expert opinion testimony relating to the final three conclusions, based on his admissions in his deposition that he is not an expert in coating or filtration bags and that he is not qualified to give opinions concerning temperatures in the baghouse.  Wausau responds that Mr. Bitar is expected to testify as a fact witness concerning his observations at the plant and statements made by Ash Grove employees; and as an expert witness concerning whether the cable-cutting caused a short or the disturbance on September 10, 2001.  Wausau represents that it has not tendered Mr. Bitar to testify as an expert on protective coating, thermodynamics, filtration bags, or cement plants in general.  On that basis, Wausau simply dismissed that portion of Ash Grove's brief.  Accordingly, that portion of Ash Grove's motion is granted as unopposed, and Mr. Bitar will not be permitted to testify as an expert with respect to any subject other than the cable-cutting and whether it caused the upset condition.[4]

### B.  *Opinion Concerning Cable-Cutting*

Ash Grove further challenges Mr. Bitar's opinion relating to the cutting of the

---

[4]The Court does not appreciate Wausau's characterization of Ash Grove's argument relating to Mr. Bitar's final three conclusions as "an apparent ploy to gain credibility for an otherwise inappropriate motion."  In light of the conclusions stated in Mr. Bitar's written report, Ash Grove was perfectly justified in seeking the Court's ruling limiting his actual testimony to subjects on which he is qualified to opine. Moreover, the remainder of Ash Grove's motion is no more inappropriate that Wausau's own unsuccessful *Daubert* motions.

cable.  Ash Grove argues that Mr. Bitar is not qualified to give the opinion.  In that regard, Ash Grove notes that Mr. Bitar's firm was originally retained not as an electrical engineer, but rather for adjusting services; that Mr. Bitar has never investigated an insurance claim involving a cement plant; that he has never testified as an expert in court; and that he has never worked as a design engineer.  The Court finds that Mr. Bitar, an electrical engineer who has experience as a forensic consultant with respect to electrical systems, is sufficiently qualified by his training and experience to give this limited expert opinion.  The Court agrees with Wausau that the original reason for his retention is irrelevant.

The Court further finds that Mr. Bitar's methods are sufficiently reliable.  Ash Grove argues that Mr. Bitar's opinion that the cable-cutting did not cause a short that upset the system was based only on unsworn statements that the cable was not in fact connected to anything, which statements are contradicted by the sworn testimony of the employee who cut the cable.  Mr. Bitar is permitted to rely on such statements, however, in giving the opinion that, if the cable was not in fact connected, then cutting it would have no effect.  The fact that the underlying assumption might be at issue does not undermine the reliability of an opinion based on that assumption.[5]  Moreover, as set forth

---

[5]It is not clear at this stage whether the statements by Ash Grove employees on which Mr. Bitar relies are in fact hearsay under Fed. R. Evid. 801(d) or subject to some hearsay exception.  At trial, Mr. Bitar may not try to inject inadmissible hearsay evidence under the guise of a basis for expert testimony.  He may give the opinion that, if the cable was not connected, then cutting it would have had no effect.  He may not testify
(continued...)

in his report and deposition, Mr. Bitar also based his opinion on the lack of damage or other physical evidence of a short circuit or other electrical event.[6]  Finally, the fact that Mr. Bitar noted in a preliminary report that the event could possibly have occurred as alleged by Ash Grove does not make his later opinion unreliable.  Ash Grove's motion is denied as it relates to this limited opinion by Mr. Bitar.

Accordingly, Ash Grove's motion to exclude opinion testimony by Mr. Bitar is granted in part and denied in part, as set forth above.

## V.   Ash Grove's Motion to Exclude – Rick Huntley (Doc. # 141)

Ash Grove seeks to exclude the opinions of Rick Huntley, Wausau's coatings expert, on the basis that his opinions are unreliable.  Ash Grove argues that the four *Daubert* factors do not support a finding of reliability here.  Specifically, Ash Grove argues that Mr. Huntley began his investigation only in late 2006; that he did not visit the plant or do any testing; that his opinions about the extent and cause of the coating's damages contradict a report by another expert at Mr. Huntley's firm, Patrick Nau, who

---

[5](...continued)
as an expert that the cable was not in fact attached if the only basis for such an opinion is a factual statement to that effect by an employee. While Mr. Bitar may base his expert opinion on what he learned from others, he may not attempt to suggest, as an expert, that such statements should be believed; rather, he should merely state his opinion that, if it is true that the cable was not connected, then a particular result follows.

[6]Mr. Bitar's report sufficiently sets forth this opinion and its bases; the fact that the opinion was not included in the report's final list of conclusions is immaterial.

was originally assigned to the case;[7] that Mr. Huntley could not account for a particular test referenced by Mr. Nau in his investigation; and that the opinions are not consistent with the coating's specifications or testimony by the coating's manufacturer.

The Court concludes that Ash Grove's objections go to the weight of Mr. Huntley's opinions, and not to their admissibility. Mr. Huntley's opinions are based on his experience with coatings and the actual damage to the coating observed in this case. He clearly has specialized knowledge, and his opinions would be helpful to the jury in resolving the issues of fact in this case. Thus, the Court cannot conclude at this stage that his expert opinions are unreliable for purposes of Rule 702, and Ash Grove's motion is denied.

## VI.     Wausau's Motion to Exclude – Eric Drews (Doc. # 139)

Wausau seeks to exclude the opinion testimony of Eric Drews, whom Ash Grove has designated as an expert witness. Mr. Drews is expected to offer opinions concerning whether the upset condition and high temperature excursion experienced on September 10, 2001, were caused by the cutting of a cable; and concerning the temperatures reached in the baghouse on that date.

### A.     *Expertise*

---

[7]Wausau objects to the use of Mr. Nau's report by Ash Grove on the basis that Mr. Nau has not been designated as an expert witness in this case and has not been deposed. Mr. Huntley reviewed Mr. Nau's report in forming his opinions, however, and he is therefore subject to questioning about that report.

14

Wausau first challenges Mr. Drews's expertise to render those opinions. Wausau argues that Mr. Drews is a mechanical engineer, and not an electrical engineer, and that he is therefore unqualified to opine about whether the cable-cutting caused an electrical event. Wausau further argues that Mr. Drews is not a specialist in thermodynamics and heat transfer; that he has not published articles, taught, or been qualified in court as an expert in the field of thermodynamics; and that he has not worked for a cement plant or conducted research concerning heat transfer in a cement or other high temperature plant.

The Court concludes that Mr. Drews is sufficiently qualified to offer his expert opinion testimony. Wausau's standards for qualification as an expert in this case are too particular.[8]   Mr. Drews is a licensed professional engineer with expertise in thermodynamics and stress analysis, and he has ample experience investigating high temperature events such as fires and explosions. He also has experience in analyzing equipment with electrical systems. Accordingly, Mr. Drews has sufficient training and experience to be helpful to the jury in offering these particular opinions.

### B.   *Reliability*

The Court also rejects Wausau's argument that Mr. Drews's opinion concerning the cable-cutting is not sufficiently reliable. Wausau argues that Mr. Drews merely accepted the statements of Ash Grove's employees regarding the short circuit, and it

---

[8]With respect to both expertise and the application of the *Daubert* factors, both parties are guilty of making arguments that their own experts could not overcome.

cites the *Daubert* factors in arguing that Mr. Drews's opinion has not been subjected to testing or peer review, or shown to be generally accepted in the scientific community. This opinion, however, does not involve application of a controversial scientific process, such that the *Daubert* factors might be more useful in determining reliability. Mr. Drews based his opinion on his experience, his investigation and inspection of the equipment, the available data from that day, the design of the system, statements of the employees, and discussions with the control panel's manufacturer. This "method" by which Mr. Drews formed this opinion is sufficiently reliable for purposes of Rule 702.

Finally, Wausau challenges the reliability of Mr. Drews's opinions concerning the temperatures reached in the baghouse. Again, Wausau decries the lack of testing, and it points to a number of factors and variables for which Mr. Drews failed to account in performing his temperature calculations. Those objections go to the weight of Mr. Drews's opinions, however, and not their admissibility. Mr. Drews based his opinions and calculations on his experience, his inspections, the design of the system, and the actual temperature data for various points along the gas stream leading to the baghouse. Accordingly, Mr. Drews's temperature opinions rest on a substantial foundation, and because they would be helpful to the jury, they are admissible under Rule 702. Wausau's motion is denied.

## VII.    Wausau's Motion to Exclude – Roger Harris (Doc. # 140)

Wausau seeks to exclude the opinion testimony of Roger Harris, a mechanical

16

engineer, whom Ash Grove has designated as an expert witness.  Mr. Harris is expected to offer expert opinion testimony concerning the temperatures reached in the baghouse and the cause of the damage to the baghouse coating.

### A.   *Expertise*

Wausau challenges Mr. Harris's qualifications to offer expert testimony concerning temperatures in the baghouse.  Wausau argues that Mr. Harris is not an expert in thermodynamics and heat transfer or in cement plants, and that he has never qualified as an expert, taught courses, or published articles in that particular field. Wausau also argues that Mr. Harris has no expertise specifically with filtration bags, and therefore cannot testify about the effect of high temperatures on those bags in September 2001.  Again, however, Wausau has set the bar too high.  Mr. Harris's expertise in this area derives from his experience as an engineer analyzing equipment and metal failures and designs, and his experience analyzing fires and the effects of high temperatures on various materials.  The Court finds Mr. Harris's training and experience sufficient to allow him to give his opinions in this area.

The Court also rejects Wausau's similar challenge to Mr. Harris's qualifications to offer expert testimony regarding the baghouse coating.  As a consultant, Mr. Harris has experience analyzing protective coating failures, including in fire cases, which necessarily involve exposure of the coating to high temperatures.  Moreover, in previous employment with a manufacturer of chemical products, Mr. Harris received training in and was responsible at the facility for protective coatings.  While Mr. Harris's lack of

experience with this particular coating may provide fodder for cross-examination, it does not render him unqualified under Rule 702.  The same is true for any confusion or misuse by Mr. Harris of particular terms in his report.

>B.    *Reliability*

Wausau challenges the reliability of Mr. Harris's opinions and calculations concerning the temperatures experienced in the baghouse on September 10, 2001, on the same bases that it challenges Mr. Drews's similar testimony.  For the same reasons set forth above with respect to Mr. Drews, the Court rejects this challenge.

The Court also rejects Wausau's challenge to the reliability of Mr. Harris's opinions concerning the coating.  Mr. Harris based those opinions on his experience, the temperature data and his temperature opinions, the coating specifications, and testimony by the coating manufacturer.  In this instance, concerns about the lack of testing or the failure to address alternative theories go to the weight of the testimony, and not to its admissibility under Rule 702.  The Court therefore denies Wausau's motion.


IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion to exclude expert testimony by Jay Warshawsky (Doc. # 128) is **granted in part and denied in part**, as set forth herein.

IT IS FURTHER ORDERED THAT plaintiff's motion to exclude expert testimony by Ghattas Bitar (Doc. # 135) is **granted in part and denied in part**, as set forth herein.

IT IS FURTHER ORDERED THAT plaintiff's motion to exclude expert testimony by Rick Huntley (Doc. # 141) is **denied**.

IT IS FURTHER ORDERED THAT defendant's motion to exclude expert testimony by Eric Drews (Doc. # 139) is **denied**.

IT IS FURTHER ORDERED THAT defendant's motion to exclude expert testimony by Roger Harris (Doc. # 140) is **denied**.

IT IS SO ORDERED.

Dated this 19th day of October, 2007, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

19